UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-00674-KK-DSRx** | Date: | February 18, 2026 |
|---|---|---|---|
| Title: | **Shan Yan v. Fereti Semaia et al.** | | |

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):   Attorney(s) Present for Defendant(s):

None Present   None Present

**Proceedings:   (In Chambers) Order GRANTING Petitioner's Ex Parte Application for Temporary Restraining Order [Dkt. 3]**

## I.
## INTRODUCTION

On February 13, 2026, petitioner Shan Yan ("Petitioner"), who is currently detained in the custody of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Fereti Semaia, Ernesto Santacruz, Jr., Todd Lyons, Pamela Bondi, and Kristi Noem ("Respondents"). ECF Docket No. ("Dkt.") 1, Petition ("Pet."). On the same day, Petitioner filed an Ex Parte Application for Temporary Restraining Order ("Application") seeking his immediate release or, in the alternative, a bond hearing before an Immigration Judge ("IJ") within seven days. Dkt. 3, Application ("App.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Application is **GRANTED**.

## II.
## BACKGROUND

As alleged in the Petition, Petitioner is a native and citizen of the People's Republic of China. Pet. ¶ 4. On March 28, 2023, Petitioner entered the United States without inspection and was subsequently apprehended by ICE. Id. ¶ 14. After two days of detention, ICE released Petitioner on a Notice of Custody Determination and Order of Release on Recognizance pursuant

to 8 U.S.C. § 1226.  Id. ¶ 15.  Within two months thereafter, Petitioner submitted an asylum application, which remains pending.  Id. ¶ 16.

Following his initial release from ICE custody, Petitioner "consistently and dutifully complied with the terms of his release" for nearly three years, including "regularly report[ing] to ICE as required."  Id. ¶ 17.  During this time, Petitioner has established a life in the United States, "working to support himself, paying taxes, and living openly in the community."  Id.

On January 21, 2026, Petitioner appeared at an ICE Field Office for a routine check-in, where, at ICE's direction, he replaced his ankle monitor with a wristband monitor.  Id. ¶ 18.  Three days later, on January 24, 2026, Petitioner received a phone call from ICE informing him his wristband monitor was emitting a weak signal.  Id. ¶ 19.  ICE further instructed Petitioner to step outside his home to address the signal issue and warned him he would be arrested if the signal from the monitor was not restored.  Id.  When Petitioner complied with ICE's instructions and stepped outside his home, ICE re-detained him.  Id.  Since then, Petitioner has been detained at the Adelanto ICE Processing Center, where he has not been provided a bond hearing.  Id. ¶¶ 1, 20.

On February 13, 2026, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

1. **Ground One:** Unlawful detention in violation of the Immigration and Nationality Act, 8 U.S.C. § 1226(a) ("Section 1226(a)");
2. **Ground Two:** Violation of the Due Process Clause of the Fifth Amendment; and
3. **Ground Three:** Violation of the Immigration and Nationality Act: Request for Relief Pursuant to Maldonado Bautista v. Noem, No. EDCV 25-01873-SSS-BFMx, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025) ("Maldonado Bautista").

Pet. ¶¶ 21-40.

On the same day, Petitioner filed the instant Application, requesting a temporary restraining order based upon his due process claim requiring his immediate release from Respondents' custody or, in the alternative, a bond hearing before an IJ within seven days.  App. at 1.  In his Application, Petitioner argues his re-detention without notice or a meaningful opportunity to be heard violates his right to procedural due process.  Id. at 8-12.

On February 17, 2026, Respondents filed a Response to the Application.  Dkt. 7, Response ("Resp.").  In their Response, Respondents do not address the merits of Petitioner's due process claim.  Rather, Respondents concede "Petitioner appears to be a member of the Bond Eligible Class certified in [Maldonado Bautista]" and contend Petitioner's relief should be limited to "a bond hearing . . . before an [IJ] under Section 1226(a)."  Id. at 1.

This matter, thus, stands submitted.

## III.
## LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction.  See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839

n.7 (9th Cir. 2001).  Under Federal Rule of Civil Procedure 65, the Court may grant a preliminary injunction to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b).  Like a preliminary injunction, a temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors").  See id. at 20.  Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, [] known as the 'sliding scale' variant of the Winter standard."  Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified).  Under the serious questions standard, the four Winter factors are "balanced, so that a stronger showing of one element may offset a weaker showing of another."  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).  Under this approach, a temporary restraining order may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," and so long as the other Winter factors are also met.  Id. at 1132.

## IV.
## THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE TEMPORARY RESTRAINING ORDER

### A.   THE LIKELIHOOD OF SUCCESS ON THE MERITS

The likelihood of success on the merits is the most important Winter factor, which "is especially true for constitutional claims."  Junior Sports Mags. Inc. v. Bonta, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).  Here, Petitioner is likely to succeed on the merits of claim that his re-detention violates the Due Process Clause.

#### 1.   Applicable Law

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause.  Zadvydas v. Davis, 533 U.S. 678, 690 (2001).  "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent."  Id. at 693.  As the Supreme Court recently reaffirmed, the Fifth Amendment "entitles [noncitizens] to due process of law in the context of removal proceedings."  A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (citation modified) (quoting Trump v. J.G.G., 604 U.S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands."  United States v. Rivera-Valdes, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property."  Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)).  To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319 (1976).  Yagman v. Garcetti,

852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting Shinault, 782 F.3d at 1057). Under the Mathews test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." Mathews, 424 U.S. at 321.

### 2. Analysis

Here, Petitioner claims Respondents have violated the Due Process Clause by re-detaining him without a pre-deprivation hearing or other procedural safeguards. App. at 8-12. The Court finds Petitioner is likely to succeed on the merits of his claim.

First, Petitioner has a substantial private interest in remaining out of immigration custody. As noted, Petitioner was released on his own recognizance in 2023 following his initial detention in immigration custody. App. at 7; see also id. at 23 (ordering Petitioner's release on recognizance pursuant to Section 1226(a)). Petitioner's release gave rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004); see also Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause.").

Moreover, while ICE's initial decision to release Petitioner on his own recognizance was discretionary, see 8 U.S.C. § 1226(a)(2) (providing a noncitizen "may" be released on "conditional parole" pending removal proceedings), that decision contained an "implicit promise that [his release] will be revoked only if he fails to live up to the [release] conditions." Morrissey, 408 U.S. at 482; see also Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). For nearly three years, Petitioner relied on this promise to become "gainfully employed," live "with family and friends," and "form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482; see also App. at 9-10 ("During the nearly three years since he entered the United States . . . , [Petitioner] lived and worked in the community, supporting himself and establishing stable ties to his community."). Moreover, the fact ICE previously held Petitioner in custody for two days when he first entered the United States "does not eliminate [his] liberty interest in remaining on release." Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025) (citing Morrissey, 408 U.S. at 482)). To the contrary, the length of Petitioner's release strengthens his interest in his continued freedom from detention. See Doe, 787 F. Supp. 3d at 1093 (finding the Government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); Pinchi, 792 F. Supp. 3d at 1034 (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest). Hence, Petitioner establishes a significant liberty interest in remaining out of immigration custody.

Second, the risk of erroneous deprivation is significant without a pre-detention hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or

alternative conditions."). In releasing Petitioner in 2023, ICE necessarily determined Petitioner did not pose a significant flight risk or danger to the community. See 8 C.F.R. § 1236.1(c)(8) (authorizing release where the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding"); see also Pinchi, 792 F. Supp. 3d at 1034 (inferring from 8 C.F.R. § 1236.1(c)(8) that ICE determined a petitioner released on recognizance was neither "a danger to the community or a flight risk"). Respondents offer no evidence or argument to the contrary. Indeed, the record suggests otherwise, as Petitioner attended all required check-ins with ICE and complied with ICE's electronic monitoring requirements. Pet. ¶ 18; App. at 25 (showing Petitioner's record of check-ins with ICE). In fact, Petitioner voluntarily appeared at the ICE Field Office only three days before being re-detained and was following ICE's direction to step outside his home to address a purposed issue with his wristband monitor when he was re-arrested. Pet. ¶ 19. The uncontroverted evidence before the Court thus "raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or his flight." Meneses v. Santacruz, No. CV 25-11206-MCS-PVCx, 2025 WL 3481771, at *4 (C.D. Cal. Dec. 2, 2025).

Given the significant risk of an erroneous deprivation of Petitioner's liberty, a pre-detention hearing would afford Petitioner the opportunity to demonstrate he does not pose a danger to the community or flight risk. See Pinchi, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention"). In contrast, without the procedural safeguard of a pre-detention hearing, ICE could, as it appears to have done so here, unlawfully re-detain Petitioner at any time, regardless of whether his detention serves any valid governmental interest. See Fernandez v. Semaia, No. EDCV 25-03412-SPG-MBKx, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) (noting post-deprivation relief could result in the petitioner's indefinite detention "without any process"). Hence, Petitioner demonstrates a high risk of erroneous deprivation of his liberty without a pre-deprivation hearing.

Third, Respondents identify no countervailing interest in re-detaining Petitioner, and the burden of a pre-detention hearing is low. As noted, Respondents have not shown Petitioner poses a flight risk or danger to the community, especially considering his compliance with the terms of his release. In fact, Respondents provide no purported reason for re-detaining Petitioner. See generally Resp. Thus, Respondents lack any governmental interest in continuing to detain Petitioner. See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk). Further, while Respondents would have expended resources in providing Petitioner with notice and a hearing before re-detaining him, "those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025). Regardless, custody hearings in immigration court are "routine" and impose only a "minimal" cost. Singh v. Bowen, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025)). Hence, Respondents' interest in Petitioner's continued detention is minimal.

In sum, Petitioner has demonstrated a strong likelihood of success on the merits of his claim that his re-detention violates his right to procedural due process. Accordingly, the first Winter factor weighs in favor of Petitioner.

### B.   THE LIKELIHOOD OF IRREPARABLE HARM

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (citation modified) (quoting Melendres, 695 F.3d at 1002). "Deprivation of physical liberty by detention constitutes irreparable harm." Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994). Indeed, Petitioner "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." Cortez v. Sessions, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018) (citation modified).

Here, as stated above, Respondents have violated Petitioner's right to procedural due process by re-detaining him without notice or a pre-detention hearing. Further, since being re-detained, Petitioner has been deprived of his ability to "earn income" and "manage his personal and financial affairs," thereby "causing ongoing economic and familial harm." App. at 12. Hence, there can be no doubt Petitioner is – and will continue to be – irreparably harmed absent relief from this Court. See, e.g., Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1037 (N.D. Cal. 2025) (finding irreparable harm where the petitioner would be "detained and [] not [] entitled to challenge his re-detention before a neutral adjudicator"); J.A.E.M. v. Wofford, No. 1:25-CV-01380-KES-HBK (HC), 2025 WL 3013377, at *8 (E.D. Cal. Oct. 27, 2025) (finding irreparable harm where the petitioner was "likely to succeed on the merits of his claim that his re-detention without a bond hearing violates the Due Process Clause").

Accordingly, the second Winter factor weighs in favor of Petitioner.

### C.   BALANCE OF EQUITIES AND PUBLIC INTEREST

The final two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (citation modified) (affirming the balance of hardships weighed in favor of plaintiffs alleging the government violated the INA).

Here, because Petitioner has demonstrated a likelihood of success on his procedural due process claim, the balance of equities and public interest "tip[] sharply" in his favor. All. for the Wild Rockies, 632 F.3d at 1135. In addition, Respondents' interest in enforcing immigration laws is not persuasive because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs., 594 U.S. 758, 766 (2021) (citing Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 582, 585-586 (1952)); see also Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs., 777 F. Supp. 3d 1039, 1045-46 (N.D. Cal. 2025), appeal dismissed, No. 25-2358, 2025 WL 1189827 (9th Cir. Apr. 18, 2025) ("[C]ourts regularly find that '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" (quoting League of Women Voters of U.S. v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016))).

Accordingly, the third and fourth Winter factors weigh in favor of Petitioner.

\*   \*   \*

Thus, because all four Winter factors weigh in his favor, Petitioner is entitled to a temporary restraining order. While Respondents contend Petitioner is entitled to "at most" a bond hearing before an IJ, Resp. at 1, the Court rejects this argument. As discussed above, Petitioner continues to suffer irreparable harm so long as he remains unlawfully re-detained in violation of his constitutional right to due process. Further, Petitioner's release is necessary to return him to the status quo, which is "the last uncontested status which preceded the pending controversy." Flathead-Lolo-Bitterroot Citizen Task Force v. Montana, 98 F.4th 1180, 1191 (9th Cir. 2024) (citation modified) (quoting GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000)). Here, the last uncontested status is Petitioner's release before his current re-detention. See J.A.E.M., 2025 WL 3013377, at *8 ("Petitioner's immediate release is required to return him to the status quo ante—'the last uncontested status which preceded the pending controversy.'" (quoting Pinchi v. Noem, No. 25-cv-05632-RMI (RFL), 2025 WL 1853763, at *3 (N.D. Cal. July 4, 2025))). Accordingly, Petitioner's immediate release from ICE's custody, rather than a bond hearing before an IJ, is the appropriate form of relief. See Pablo Sequen v. Albarran, No. 25-cv-06487-PCP, 2025 WL 2935630, at *11 (N.D. Cal. Oct. 25, 2025) (enjoining petitioners' re-detention without a pre-deprivation hearing where a post-arrest bond hearing "would only be provided after they have been detained and thereby deprived of their liberty . . . without first providing an opportunity for them to demonstrate why their detention is unwarranted").

## V.
## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. Petitioner's Ex Parte Application for Temporary Restraining Order is **GRANTED**;[1]
2. Respondents are **ORDERED** to immediately release Petitioner from their custody;
3. Respondents are **ENJOINED** from re-detaining Petitioner without providing him a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required;
4. Respondents are **ORDERED** to file a status report no later than February 19, 2026, regarding their compliance with this Order; and
5. Respondents are **ORDERED TO SHOW CAUSE in writing no later than seven (7) days from the date of this Order** why the Court should not issue a preliminary injunction. Petitioner may file a Reply **no later than ten (10) days from the date of this Order**.

---

[1] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). Here, it is unlikely Respondent will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996). Accordingly, the Court waives the bond requirement.

Failure to comply with this Order will result in sanctions.

**IT IS SO ORDERED**.